HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
GREGORY R. MICHAEL (SBN: 306814)
gmichael@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR

# THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELISSA MELENDEZ,** an individual; **BILAL ALI ESSAYLI**, an individual**; CHARLES MCDOUGALD**, an individual; **THE REPUBLICAN NATIONAL COMMITTEE;** and **THE CALIFORNIA REPUBLICAN PARTY**, <br><br>            Plaintiffs, <br><br>            v. <br><br> **GAVIN NEWSOM**, in his official capacity as Governor of the State of California; and **ALEX PADILLA**, in his official capacity as Secretary of State of the State of California, <br><br>            Defendants. | Case No.: _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

NOW COME the above named Plaintiffs, MELISSA MELENDEZ, BILAL ALI ESSAYLI, CHARLES MCDOUGALD, THE REPUBLICAN NATIONAL COMMITTEE, and THE REPUBLICAN PARTY OF CALIFORNIA, by their attorneys, Michael Best & Friedrich LLP and Dhillon Law Group, Inc., as and for claims against the above-named Defendants, GAVIN NEWSOM, in his official capacity as the Governor of the State of California ("Governor Newsom") and ALEX PADILLA, in his official capacity as Secretary of State of the State of California ("Secretary of State"), allege and show the Court as follows (this "Complaint").

1

**NATURE OF ACTION**

1.      This is a civil action for declaratory relief and injunctive relief pursuant to 42 U.S.C. § 1983 (this "Action").

2.      This Action presents facial challenges to Section 1 of California Senate Bill 27 now codified as Cal. Elections Code §§ 6880-84 (Deering 2019) (the "Act"), which effectively restricts eligibility for the office of President of the United States ("President") in California's presidential primary election to candidates who release the previous five years of their confidential personal federal tax returns for publication on the Secretary of State's internet website.  The Act violates (I) the Qualifications Clause of Article II, § 1, cl. 5 of the U.S. Constitution; (II & III) the First Amendment to the U.S. Constitution, as incorporated against the State of California by the Fourteenth Amendment to the U.S. Constitution; (IV) the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution; and (V) the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

3.      As demonstrated by the legislative history and Governor Newsom's public comments, the Act is a naked political attack against the sitting President of the United States.  The Act subverts the franchise for cheap political gain, creates an extra-constitutional qualification for the office of President, and effectively disenfranchises voters by denying their right to associate for the advancement of political beliefs and effectively cast a vote for the otherwise qualified candidate of their choosing.  The United States Supreme Court has stated that the rights of individual voters to associate for the advancement of political beliefs and effectively cast a vote for their preferred candidate both "rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).  Moreover, "[n]o right is more precious in a free county than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined." *Id.* at 31 (quoting *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964)).  It is this Court's duty to defend the Constitutional principles and rights at stake by striking down the Act.

Complaint for Declaratory
and Injunctive Relief

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this Complaint arise under the Constitution and federal laws of the United States.

5.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation of rights secured by the Constitution of the United States and Acts of Congress, caused by a person(s) acting under color of State law.

6.      This Court may grant declaratory relief pursuant to 28 U.S.C. § 2201.

7.      The Eastern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce the Act; and it is the District in which substantially all of the events giving rise to the claims occurred, including passage of the Act by the California legislature and signature by Governor Newsom.

**PARTIES**

8.      Plaintiff Melissa Melendez is a United States citizen; United States Navy veteran; resident of Riverside County, California; Member of the California State Assembly; and registered Republican voter in California.  Melendez actively supported the 2016 election of then-candidate Donald J. Trump ("President Trump"); has been active in supporting the re-election of President Trump; and intends to be a delegate for President Trump at the 2020 Republican National Convention in Charlotte, North Carolina. Melendez voted for President Trump in California's 2016 presidential primary election and is planning to do so again in California's 2020 presidential primary election.

9.      Plaintiff Bilal Ali "Bill" Essayli is a United States citizen; resident of Riverside County, California; and registered Republican voter in California.  Essayli was a Republican candidate for the California State Assembly in the 60th District.  Essayli voted for President Trump

Complaint for Declaratory
and Injunctive Relief

in California's 2016 presidential primary election and is planning to do so again in California's 2020 presidential primary election.

10.     Plaintiff Chuck McDougald is a United States citizen; United States Army veteran; resident of San Mateo County, California; and registered Republican voter in California.  He was a delegate of then-candidate Donald J. Trump to the 2016 Republican National Convention in Cleveland, Ohio.  McDougald has been actively working with the veteran community to support President Trump.  He intends to be a delegate for President Trump at the 2020 Republican National Convention in Charlotte, North Carolina.  McDougald voted for President Trump in California's 2016 presidential primary election and is planning to do so again in California's 2020 presidential primary election.

11.     The United States Constitution protects the fundamental rights of Plaintiffs Melendez, Essayli, and McDougald (collectively, the "California Voter Plaintiffs") to exercise their freedom of association and speech via the franchise by voting for the Republican candidate of their choice on the Republican primary ballot in March, 2020, provided that candidate qualifies under the Qualifications Clause of Article II of the U.S. Constitution.

12.     Plaintiff the Republican National Committee (the "RNC") is a national political party with its principal place of business located at 310 First Street, S.E. Washington D.C., 20003.

13.     The RNC organizes and operates the Republican National Convention, which nominates a candidate for President of the United States.

14.     A Republican candidate for President is nominated through a majority vote of the delegates to the Republican National Convention, estimated to be 1,272 out of a total 2,542 delegates in 2020.  RNC Rule 16(a)(1) requires that when there is a statewide presidential preference vote, the results must be used to allocate and bind the state's delegation to the Republican National Convention.  California, the nation's most populous state, has the most delegates and most votes towards the Republican nomination for President.  California is currently

Complaint for Declaratory
and Injunctive Relief

allocated 172 delegates, constituting 14% of the 1,272 delegates currently needed to secure the nomination.

15.     The RNC represents over 30 million registered Republicans in all 50 states, the District of Columbia, and the United States territories.  It is comprised of 168 voting members representing state Republican Party organizations.

16.     The RNC has a vital interest and active commitment to protecting the constitutional and statutory rights of Republican voters and candidates throughout the nation relating to the electoral process.  It therefore has organizational standing to bring this suit to enforce its own rights and interests.  The RNC also has associational standing to bring this suit on behalf of its members because (a) its members would have direct standing to bring this suit on their own behalf; (b) the interests the RNC seeks to protect are germane to its fundamental purposes; and, (c) neither the asserted claims nor the appropriate relief requires the participation of any individual members of the RNC. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

17.     Plaintiff the California Republican Party (the "CAGOP") is a political party in California with its principal place of business located at 1001 K Street, 4th Floor, Sacramento, CA 95814. The Republican State Central Committee (the "RSCC") is the CAGOP's governing body. The RSCC and the CAGOP exercise their "federal and state constitutional rights, as set forth in the First and Fourteenth Amendments to the United States Constitution, and Article IV, Section 5 . . . to represent and speak for [their] members [and] to endorse and to nominate candidates for all partisan elective offices.." Section 1.04.01 of the CAGOP Bylaws.

18.     The CAGOP represents over 4.7 million registered Republican voters in the State of California as of February 10, 2019.  Nearly 2.2 million votes were cast in the 2016 California Republican presidential primary election.

19.     Section 6.01 of the CAGOP Bylaws governs the selection of delegates to the Republican National Convention for the purpose of nominating a Republican candidate for President.  It specifies that the CAGOP's delegates to the 2020 Republican National Convention

Complaint for Declaratory
and Injunctive Relief

in Charlotte, North Carolina will be chosen by the presidential candidate who obtained the plurality of votes in the California Republican presidential primary election.

20.     The CAGOP has a vital and active interest in protecting the constitutional and statutory rights of its members relating to the electoral process. It therefore has organizational standing to bring this suit to enforce its own rights and interests.   The CAGOP also has associational standing to bring this suit on behalf of its members because (a) CAGOP's members would have direct standing to bring this suit on their own behalf; (b) the interests it seeks to protect are germane to its fundamental purposes; and (c) neither the asserted claims nor the appropriate relief requires the participation of any individual members of the CAGOP. *Allen v. Wright*, 468 U.S. 737, 751 (1984).

21.     Defendant Gavin Newsom is made a party to this Action in his official capacity as Governor of the State of California.  He signed the Act into law and is charged with the "executive power" of California, including the responsibility to "see that the law is faithfully executed." Cal. Const. art. V, § 1.

22.     Defendant Alex Padilla is made a party to this Action in his official capacity as Secretary of State of the State of California.  He is the official charged with enforcing the Act by excluding candidates who fail to provide their confidential personal federal tax returns from California's presidential primary election and publishing any tax returns he receives pursuant to the Act on his website.

## FACTUAL ALLEGATIONS

23.     In 2016 then-candidate Donald J. Trump won the California Republican presidential primary election, receiving nearly 75% of the vote and all of California's 172 delegates to the 2016 Republican National Convention.

24.     In the November 8, 2016 general election, President Trump, as the Republican nominee, was elected President with 304 votes in the Electoral College.

6

Complaint for Declaratory
and Injunctive Relief

25.     Enraged by President Trump's victory and his decision not to disclose his federal tax returns, Democrat-controlled state legislatures targeted President Trump by drafting legislation designed to force him to publicly disclose his confidential personal tax returns.

26.     The Sixteenth Amendment authorized a national income tax in 1913 and the "U.S. Individual Income Tax Return" known as "Form 1040" was created the same year.  No candidate or federal official has ever been required to publicly disclose their confidential personal tax returns until the passage of this extraordinary Act.

27.     26 U.S.C. § 6103(a) guarantees the confidentiality of federal tax returns, making it a federal crime for federal or state employees to disclose "any return[s] or return information" they receive in connection with their official responsibilities, except for certain narrow exceptions that do not apply here.

28.     No President voluntarily disclosed his personal tax returns until 1973.  President Nixon released his confidential personal tax returns that year, during his second term, after portions of them were illegally leaked.

29.     President Ford did not release his confidential personal tax returns, but instead provided only a summary.

30.     The decision among presidential candidates to keep their personal tax returns confidential is still common.  In 1992, former Governor of California Jerry Brown, then a candidate for the Democratic nomination for President, elected not to release his tax returns.

31.      In 2000, Ralph Nader, who received nearly 3 million votes in the 2000 general election for President as a third-party candidate, elected not to disclose his tax returns.

32.     Upon information and belief, President Trump has complied with the Ethics in Government Act of 1978 ("EIGA"), Pub. L. No. 95-521, 92 Stat. 1824 (Oct. 26, 1978), as amended, which imposes a monetary civil penalty on federal officials and candidates for federal office who fail to file required financial disclosures.  The EIGA neither requires disclosure of confidential personal tax returns nor creates any new qualifications for holding any federal office.

Complaint for Declaratory
and Injunctive Relief

33.     In March of 2017, the New Jersey state legislature was the first to pass legislation, Senate Bill No. 3048 ("S3048"), targeting President Trump's tax returns.  On May 1, 2017, Governor Chris Christie of New Jersey vetoed S3048.  In his veto statement, Governor Christie declared, "This transparent political stunt masquerading as a bill is politics at its worst" and is unconstitutional because "the United States Constitution sets the rules in this regard to prevent politics like this bill." Governor Chris Christie, *Governor's Veto Message, S3048*, *available at* https://www.njleg.state.nj.us/2016/Bills/S3500/3048_V1.PDF.     Governor     Christie     further observed that the state's legislature had passed "this unconstitutional bill as a form of therapy to deal with their disbelief at the 2016 election results, and to play politics to their base.  Any claim to the contrary is belied by the press releases its supporters issued immediately upon its final passage and the plain language of the bill." *Id.*

34.     In September of 2017, the California State Legislature passed its own legislation targeting President Trump's tax returns, Senate Bill 149, which was substantially identical to the Act challenged in this Action.  Senate Bill 149 would have required presidential candidates to disclose five years of confidential personal tax returns in order to appear on California's presidential primary ballot.  California's Office of Legislative Counsel ("OLC") concluded that Senate Bill 149 would be unconstitutional if enacted. Ops. Cal. Legis. Counsel, *Presidential Qualification: Tax Return Disclosure* No. 1718407 (Sept. 7, 2017*)*.  OLC explained that, if enacted, Senate Bill 149 "would violate the qualifications clause of the United States Constitution." *Id.*   It cited numerous U.S. Supreme Court cases as precedent for the Act's unconstitutionality, including *Cook v. Gralike*, 531 U.S. 510 (2001) and *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). *Id.*

35.     Then-Governor Jerry Brown, a Democrat, vetoed Senate Bill 149 and issued the following veto message:

> This bill requires any candidate for president to disclose five years of his or her
> income tax returns before their name can be placed on California's primary election

Complaint for Declaratory
and Injunctive Relief

ballot. . . . While I recognize the political attractiveness-even the merits-of getting President Trump's tax returns, I worry about the political perils of individual states seeking to regulate presidential elections in this manner. First, it may not be constitutional. Second, it sets a "slippery slope" precedent. Today we require tax returns, but what would be next? Five years of health records? A certified birth certificate? High school report cards? And will these requirements vary depending on which political party is in power?  A qualified candidate's ability to appear on the ballot is fundamental to our democratic system. For that reason, I hesitate to start down a road that well might lead to an ever escalating set of differing state requirements for presidential candidates.

Governor Jerry Brown, *Governor's Veto Message, SB 149*, *available at* https://leginfo.legislature.ca.gov/faces/billStatusClient.xhtml?bill_id=201720180SB149.

36.     Despite Governor Brown's veto and his strong rebuke of Senate Bill 149, Democrats in the California State Legislature reintroduced substantially identical legislation in the form of the Act under new California Governor Newsom.

37.     The California State Legislature passed the Act on July 11, 2019, Governor Newsom signed it into law on July 30, 2019, and it is codified as Chapter 7 to Part 1 of Division 6 of the California Elections Code.

38.     The Act provides, in relevant part:

6883.  (a) Notwithstanding any other law, the Secretary of State shall not print the name of a candidate for President of the United States on a primary election ballot, unless the candidate, at least 98 days before the presidential primary election, files with the Secretary of State copies of every income tax return the candidate filed with the Internal Revenue Service in the five most recent taxable years . . . .

Cal. Elections Code § 6883(a) (Deering 2019).

39.     The Act further requires that:

9

Complaint for Declaratory
and Injunctive Relief

6884.  (a) The candidate shall submit the following to the Secretary of State:

(1) (A) Two copies of each tax return required under Section 6883. One copy of each tax return shall be identical to the version submitted to the Internal Revenue Service, without redactions. The second copy of each tax return shall be redacted pursuant to this paragraph. The tax returns shall be provided to the Secretary of State in hard-copy form.

(B) The candidate shall redact the following information from the redacted version of each tax return:

(i) Social security numbers.

(ii) Home address.

(iii) Telephone number.

(iv) Email address.

(v) Medical information.

(C) The candidate may also redact the following information from the redacted version of each tax return:

(i) Names of dependent minors.

(ii) Employer identification number.

(iii) Business addresses.

(iv) Preparer tax identification number, address, telephone number, and email address of paid tax return preparers.

. . .

(b) The Secretary of State shall review the redacted copy of each tax return submitted by the candidate to ensure that the redactions comply with subdivision (a). If the Secretary of State determines that the candidate has redacted information other than that permitted by subdivision (a), the Secretary of State shall prepare a new version of the tax return with only the redactions permitted by that subdivision.

10

Complaint for Declaratory
and Injunctive Relief

(c) (1) Within five days of receipt of the candidate's tax returns, the Secretary of State shall make redacted versions of the tax returns available to the public on the Secretary of State's internet website. Except as provided in paragraph (2), the Secretary of State shall make public the redacted versions of the tax returns submitted by the candidate pursuant to subdivision (a).

(2) If the Secretary of State is required to prepare a redacted version of a tax return pursuant to subdivision (b), the Secretary of State shall make public that version.

Cal. Election Code § 6884 (2019).

40.     The Act includes a purpose statement alleging, in relevant part:

[The] State of California has a strong interest in ensuring that its voters make informed, educated choices in the voting booth.  To this end, the state has mandated that extensive amounts of information be provided to voters, including county and state voter information guides.  The Legislature also finds and declares that a Presidential candidate's income tax returns provide voters with essential information regarding the candidate's potential conflicts of interest, business dealings, financial status, and charitable donations.

Cal. Election Code § 6881 (Deering 2019).

41.     The Act extends well beyond the typical framework for educating voters on the procedural aspects of elections and well into the unconstitutional realm of political activism on the ballot under the guise of election administration.   The Act is not a good-faith attempt to educate voters, but is rather an unconstitutional attempt to force the policy assessment of the California State Legislature that candidates who do not disclose their personal tax returns are not fit to be President onto California voters. *See Gralike*, 531 U.S. at 514, 525-26 (2001) (holding that a ballot label detailing candidates' position on term limits was an unconstitutional attempt to influence the election rather than a good-faith attempt to educate voters as part of election administration).

Complaint for Declaratory
and Injunctive Relief

42.   Comments appearing in the Act's legislative history, as well as statements made by California state legislators while the Act was under consideration and after its enactment, demonstrate that the Act is really a political attack motivated by animus towards President Trump.

43.   State Senator Mike McGuire, one of the Act's co-sponsors in the California Senate, has repeatedly confirmed that the Act was primarily intended as a political attack against President Trump.  He recently stated, "We believe that President Trump, if he truly doesn't have anything to hide, should step up and release his tax returns." Julio Rosas, *California Democrats threaten to keep Trump off primary ballot if he doesn't hand over tax returns*, WASHINGTON EXAMINER, May 3, 2019, *available at* https://www.washingtonexaminer.com/news/california-democrats-threaten-to-keep-trump-off-primary-ballot-if-he-doesnt-hand-over-tax-returns.  State Senator McGuire further confirmed the narrow political intent of the Act when he stated it "will make presidential tax returns public in CA *just in time for the 2020 election*." *Id.* (emphasis added).

44.   Governor Newsom has suggested he is seeking the President's tax returns for political gain, stating, "Folks think [President Trump] is avoiding tax release because he pays a very low rate, I think it's because his finances are a house of cards." John Meyers, *Trump's tax returns required under new California election law*, LOS ANGELES TIMES, Jul. 30, 2019, *available at* https://www.latimes.com/california/story/2019-07-30/trump-tax-returns-california-ballot-gavin-newsom-law.

45.   President Trump has announced his candidacy for the 2020 Republican nomination for President of the United States and has declined to disclose his confidential personal tax returns. On information and belief, President Trump will not disclose his confidential personal tax returns prior to the 2020 general election.  The Act would therefore keep President Trump off California's 2020 Republican presidential primary ballot.  Under the current rules of the CAGOP and the RNC, this will directly impede President Trump's ability to obtain the support of California's delegates to the 2020 Republican National Convention, secure the Republican nomination for President, and appear on the 2020 General Election Ballot in all 50 states.

Complaint for Declaratory
and Injunctive Relief

46.    The Act will cause direct and substantial harm to the RNC and its mission of promoting, nominating and electing candidates to public office, including the Presidency, by effectively disqualifying the sitting President from California's Republican presidential primary election.  Such disqualification will prevent him from winning any of California's delegates to the 2020 Republican National Convention.

47.    The Act will cause direct and substantial harm to the CAGOP and its mission of nominating and electing persons affiliated with the Republican Party as President.  The Act will directly impair the ability of the CAGOP and its members to ensure that California's delegates to the Republican National Convention support the otherwise qualified candidate for the Republican nomination for President who enjoys the support of a plurality of Republican voters in California and is therefore most likely to be successful in California's general election for President.

48.    The Act will further cause direct and substantial harm to both the RNC and the CAGOP by depressing Republican voter turnout at California's 2020 primary election.  The "coattail effect" on down ticket candidates is a well-recognized political phenomenon which explains the harm to the RNC, the CAGOP, and Republican primary candidates in other election contests if the sitting Republican President is not permitted to appear on the ballot.  *See* Steven G. Calabresi, James Lindgren, *The President: Lightning Rod or King?* (2006) 115 YALE L.J. 2611, 2612 (describing the "coattail effect" of the presidential candidate on down-ballot candidates of the president's party).  On information and belief, a large number of Republican primary voters will be suppressed and discouraged from voting at the primary election if qualified Republican candidates, including President Trump, are excluded from California's presidential primary ballot.  Under California's voter-nominated "Top Two Primary" system, applicable to congressional and state-level elections, depressed Republican voter turnout will substantially impair the ability of Republican candidates to qualify for the general election ballot, effectively disqualifying Republicans from running for these offices.

Complaint for Declaratory
and Injunctive Relief

49.   The Act will further harm individual voters, including the California Voter Plaintiffs, by preventing them from associating with, and voting in the California Republican presidential primary for, an otherwise qualified candidate of their choice who declines to disclose his or her confidential personal tax returns.

## CLAIMS

### I. FIRST CLAIM FOR RELIEF

**Violation of the Qualifications Clause of Article II, Section 1 of the U.S. Constitution as enforced by 42 U.S.C. § 1983**

(*By all Plaintiffs against all Defendants*)

50.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

51.   The Qualifications Clause of the United States Constitution sets forth the exclusive eligibility requirements for an individual seeking the Office of President of the United States, which are that the individual must be: (a) a natural born citizen, (b) thirty-five years of age and (c) fourteen years a resident of the United States. U.S. Const. art. II, § 1, cl. 5.

52.   The Act, on its face, violates the Qualifications Clause by creating a new, extra-constitutional qualification – the public disclosure of personal tax returns – in addition to the eligibility requirements established by the U.S. Constitution.

53.   In *United States Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), the U.S. Supreme Court invalidated a similar attempt by a state to add an extra-constitutional qualification for congressional candidates.  In *Thornton*, the Supreme Court invalidated an Arkansas state constitutional amendment that prohibited any candidate from appearing on the state's ballot if he or she had already served more than three terms in the U.S. House of Representatives or two terms in the U.S. Senate. *Id.* at 783.

54.   Even though the amendment at issue in *Thornton* purported to take the form of a ballot-access qualification, the Court recognized that it acted as an additional qualification in violation of the Qualifications Clause.  The Court cautioned that "allowing States to evade the

14

Qualifications Clauses by 'dressing eligibility standards for Congress in ballot access clothing' trivializes the basic principles of our democracy that underlie those Clauses." *Id*. at 831.

55.     The Court further noted in *Thornton* that, because the Founders intended "to fix as exclusive the qualifications [for Congress] in the Constitution," States "lack the power to add qualifications." *Id.* at 806.  The Supreme Court went on to note in *Thornton* that States "have just as much right, and no more, to prescribe new qualifications for a representative, as they have for a president." *Id.* at 803-04 (citing 1 Joseph Story, Commentaries on the Constitution of the United States § 627 (3d ed. 1858)).  Even the dissenters in *Thornton* accepted as a "fact that a State has no reserved power to establish qualifications for the office of President." *Id.* at 861 (Thomas, J., dissenting).

56.     The Act unconstitutionally attempts to dress a new eligibility requirement for the office of President in ballot-access clothing.  It requires a person to disclose their confidential personal tax returns to be eligible to meaningfully contest California's presidential primary election.  This restriction substantially burdens candidates' ability to obtain votes and/or delegates, thereby impeding their ability to secure the Republican Party's nomination for President and appear on the 2020 general election ballot as the Republican candidate for President in all 50 states.

57.     Unless enjoined, Defendants will act under color of state law to deprive the California Voter Plaintiffs – and millions of other voters – of their right under the Qualifications Clause to vote for the constitutionally eligible candidate of their choice.

58.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Act with respect to presidential candidates who are otherwise qualified for the California presidential primary ballot under the Qualifications Clause.

59.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

Complaint for Declaratory
and Injunctive Relief

## II. SECOND CLAIM FOR RELIEF

**Violation of the First and Fourteenth Amendments of the U.S. Constitution, free speech and right to vote, as enforced by 42 U.S.C. § 1983**

(*By all Plaintiffs against all Defendants*)

60.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

61.    The First Amendment of the United States Constitution, as incorporated against California by the Fourteenth Amendment, guarantees, *inter alia*, "the rights of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of political persuasion, to cast their votes effectively." *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184 (1979) (quoting *Williams*, 393 U.S. at 30).

62.    The Act, on its face, violates the rights of registered Republican voters, including the California Voter Plaintiffs, by preventing them from associating with, expressing their political preferences for, or casting their votes in California's presidential primary election for, the constitutionally qualified candidate of their choice for the Republican nomination for President if the candidate elects not to disclose his or her confidential personal tax returns.

63.    By barring candidates who decline to release their tax returns from running in the California Republican presidential primary election, the Act inflicts a severe, unreasonable, and discriminatory burden on the California Voter Plaintiffs and millions of other registered Republican voters in California.

64.    In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), the U.S. Supreme Court established the standards used to evaluate the constitutionality of burdens on voting rights such as the Act.  When, as here, a plaintiff's First and Fourteenth Amendment rights "are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

16

Complaint for Declaratory
and Injunctive Relief

65.     The Supreme Court has stated that the rights of individual voters to associate with, and vote for, the candidate of their choosing "rank among our most precious freedoms . . . [N]o right is more precious in a free county than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined." *Williams*, 393 U.S. at 30-31 (citing *Wesberry*, 376 U.S. at 17).

66.     The Act is neither narrowly drawn nor does it advance any compelling state interest.  The Act includes a purpose statement alleging that it is necessary to "educate" voters.  Even taken at face value, the interest claimed in the Act's purpose statement does not qualify as compelling.  This claimed interest in voter education is woefully inadequate to justify the Act's sweepingly overbroad approach of barring constitutionally qualified candidates from California's presidential preference primary.

67.     In the event that this Court declines to apply strict scrutiny, the *Anderson-Burdick* test requires it to determine the Act's validity by weighing: (1) the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments; (2) the state's interests and justifications for the imposed ballot restriction; and (3) the extent to which the state's interests make it necessary to burden the plaintiffs' rights. *Anderson*, 460 U.S. at 789.  Under the *Anderson-Burdick* Test, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434.

68.     The Act fails the *Anderson-Burdick* Test in much the same way as the burdensome filing deadline challenged in *Anderson*. The Act imposes a substantial burden on the voting and associational rights of the California Voter Plaintiffs and other registered Republican voters in California by prohibiting them from voting for the constitutionally eligible candidate of their choice for the Republican nomination for President.

17

Complaint for Declaratory
and Injunctive Relief

69.     The Act creates a functional bar against casting an effective ballot for a candidate who elects not to disclose their confidential personal tax returns. *See, e.g.*, *Anderson*, 460 U.S. at 799 ("We have previously noted that [a write-in] opportunity is not an adequate substitute for having the candidates name appear on the printed ballot."); *Thornton*, 514 U.S. at 830-31 ("[E]ven if petitioners are correct that incumbents may occasionally win reelection as write-in candidates, there is no denying that the ballot restrictions will make it significantly more difficult for the barred candidate to win the elections.); *Lubin v. Panish*, 415 U.S. 709, 719, n. 5 (1974) ("The realities of the electoral process . . . strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot.").

70.     These burdens are wholly unnecessary to promote California's stated interests in transparency and voter education.  Rather than legitimately educating voters, the Act reflects the California State Legislature's attempt to foist onto voters its political assessment that candidates who do not disclose their personal tax returns should not serve as President.  This judgment is for the voters to make. *See Gralike*, 531 U.S. at 514, 525-26 (holding that a ballot label detailing candidates' position on term limits was an unconstitutional attempt to influence the election rather than a good-faith attempt to educate voters as part of election administration).

71.     Furthermore, California's alleged concerns about a candidate's "potential conflicts of interest, business dealings, [and] financial status" are already addressed by the EIGA, which imposes a monetary civil penalty on federal officials and candidates for federal office who fail to file required financial disclosures.

72.     The U.S. Supreme Court in *Anderson* explained, "[T]he President and Vice President of the United States are the only elected officials who represent all the voters of the Nation . . . .  Thus, in a Presidential election a State's enforcement of more stringent ballot access requirements . . . has an impact beyond its own borders." 460 U.S. at 794-95.  Thus, a "State has a less important interest in regulating Presidential elections than statewide or local elections,

Complaint for Declaratory
and Injunctive Relief

because the outcome of the former will be largely determined by voters beyond the State's boundaries." *Id*. at 795.

73.  The Act functions to broadly deprive the California Voter Plaintiffs and other registered Republican voters wishing to cast a ballot for an otherwise qualified candidate who elects not to disclose his or her tax returns of their fundamental rights to associate for the advancement of political beliefs, and cast their votes effectively for the constitutionally qualified candidate of their choice.  Their interest in those fundamental rights far outweighs the Act's spurious assertion of California's interests in transparency and voter education.  The Act is therefore unconstitutional.

74.  Unless enjoined, Defendants will act under color of state law to deprive California Voter Plaintiffs – and millions of other voters – of their associational and free speech rights under the First Amendment.

75.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Act with respect to presidential candidates who are otherwise qualified for the presidential primary ballot under the Qualifications Clause.

76.  Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

### III. THIRD CLAIM FOR RELIEF

**Violation of the First and Fourteenth Amendments of the U.S. Constitution, free speech and right to association, as enforced by 42 U.S.C. § 1983**

*(By the RNC and the CAGOP against all Defendants)*

77.  The RNC and the CAGOP incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

78.  The First Amendment of the United States Constitution, as incorporated against California by the Fourteenth Amendment, guarantees freedom of speech and association. U.S.

19

Const. amend. I; U.S. Const. amend. XIV.  These provisions guarantee political parties and their members the fundamental right to "select a standard bearer who best represents the party's ideologies and preferences." *Eu v. San Francisco Democratic Comm.*, 489 U.S. 214, 224 (1989) (quotation marks omitted).  The Supreme Court has recognized that a party primary is the "critical juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Tashjian v. Republican Party*, 479 U.S. 208, 216 (1986).  Accordingly, the First Amendment prohibits states and courts from intruding into political parties' presidential nomination processes. *California Democratic Party v. Jones*, 530 U.S. 567, 575 (2000) (affirming "the special place the First Amendment reserves for, and the special protection it affords, the process by which a political party nominates candidates"); *see also*, *O'Brien v. Brown*, 409 U.S. 1, 4-5 (1972).

79.   By excluding constitutionally eligible candidates from the California presidential preference primary, the Act, on its face, violates the First and Fourteenth Amendment rights of the RNC and the CAGOP to identify and select the individual presidential candidate of their choice to act as the "standard bearer who best represents [their] ideologies and preferences." *Eu*, 489 U.S. at 224 (quoting *Ripon Society, Inc. v. National Republican Party*, 173 U.S. App. D.C. 350, 384, 525 F.2d 567, 601 (1975)).

80.   These restrictions also violate the rights of the California Voter Plaintiffs and other Republican voters throughout the state because "any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." *Cousins v. Wigoda*, 419 U.S. 477, 487 (1975).

81.   The Act is even more egregious than the laws held unconstitutional in *Eu* and *California Democratic Party* because it not only prevents a political party from endorsing a class of candidates, but excludes those candidates from the party's primary ballot altogether.  As a direct result of the Act, a Republican candidate that maintains the confidentiality of his or her personal tax returns is effectively disqualified from California's Republican presidential primary election.

Complaint for Declaratory
and Injunctive Relief

Such exclusion precludes the candidate from winning any of the CAGOP's delegates to the 2020 Republican National Convention and makes it more difficult for the RNC and the CAGOP to select that candidate as its "standard bearer."

82.     The State may believe that a candidate should disclose his or her tax returns to run for President, but "a State, or a court, may not constitutionally substitute its own judgment for that of the party." *Democratic Party of the United States v. Wisconsin* ex rel. *La Follette*, 450 U.S. 107, 123-24 (1981).    The Supreme Court has repeatedly emphasized that States "have no constitutionally mandated role in the great task of the selection of Presidential and Vice-Presidential candidates." *Cousins*, 419 U.S. at 489-90.

83.     Unless enjoined, Defendants will act under color of state law to deprive the RNC and the CAGOP of their associational and free speech rights under the First Amendment.

84.     The RNC and the CAGOP have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Act with respect to presidential candidates who are otherwise qualified for the presidential primary ballot under the Qualifications Clause.

85.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

### IV. FOURTH CLAIM FOR RELIEF

**Violation of the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution as enforced by 42 U.S.C. § 1983**

*(By all Plaintiffs against all Defendants)*

86.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

87.     The Privileges or Immunities Clause states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 2.

Complaint for Declaratory
and Injunctive Relief

88.     The Act, on its face, violates the Privileges or Immunities Clause because it directly impacts the important national interest in the election of the President through the Electoral College and abridges the ability of California Voter Plaintiffs, other Republican voters and electors from states other than California to vote for candidates for President that do not disclose their confidential personal tax returns.

89.     The Act strikes at the core of the important national interest in presidential elections.  By denying an otherwise qualified candidate's eligibility to stand for President in California's Republican presidential primary election, the Act effectively prevents such a candidate from securing California's delegates to the Republican National Convention, significantly impairing that candidate's ability to secure the Republican nomination for President, and thereby impacting the ability of voters throughout all 50 states and the District of Columbia who support such a candidate to effectively cast their ballot for the candidate of their choice.

90.     Unless enjoined, Defendants will act under color of state law to deprive California Voter Plaintiffs – and millions of other voters – of their important right as citizens of the United States to effectively cast their vote for the candidate of their choice for President.

91.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Act with respect to presidential candidates who are otherwise qualified for California's presidential primary ballot.

92.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

Complaint for Declaratory
and Injunctive Relief

## V. FIFTH CLAIM FOR RELIEF

### Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as enforced by 42 U.S.C. § 1983

*(By all Plaintiffs against all Defendants)*

93.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

94.     The Equal Protection Clause of the Fourteenth Amendment provides that no State "shall […] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

95.     The Act provides for differential treatment between presidential candidates affiliated with a political party, who must disclose their confidential personal tax returns in order to appear on the primary ballot for that party, and presidential candidates unaffiliated with a political party, who are under no such obligation to disclose their confidential personal tax returns to appear on the ballot.  The Act thereby creates two categories of voters: those who support candidates affiliated with a political party and those who support candidates that are not affiliated with a political party.

96.     Voters who support candidates unaffiliated with a political party are able to cast an effective ballot for their preferred candidate regardless of whether the candidate releases his or her confidential personal tax returns; whereas, voters who support candidates affiliated with a political party will likely only be able to vote for their candidate if he or she agrees to disclose his or her confidential personal tax returns.

97.     There is no sufficient justification for the disparate treatment of voters who support a presidential candidate affiliated with a political party versus voters who support a presidential candidate not affiliated with a political party.

98.     The California Voter Plaintiffs are all supporters who desire to vote for President Trump, a candidate affiliated with the Republican Party, in the 2020 California Republican presidential primary and general elections.

Complaint for Declaratory
and Injunctive Relief

99.     The Act violates the California Voter Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

100.     Unless enjoined, Defendants will act under color of state law to deprive California Voter Plaintiffs – and millions of other voters – of their right to equal protection under the law.

101.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Act with respect to presidential candidates who are otherwise qualified for the presidential primary ballot under the Qualifications Clause.

102.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A.     An order and judgment declaring that the Act, as it relates to a candidate for President, is unconstitutional on its face because it creates an additional qualification, public disclosure of personal tax returns, for the office of President in violation of the Qualifications Clause of Article II, § 1 of the U.S. Constitution;

B.     An order and judgment declaring that the Act, as it relates to a candidate for President, is unconstitutional on its face because it places an unreasonable burden on the voting and associational rights of the candidate's party and supporters, including the California Voter Plaintiffs, in violation of the First and Fourteenth Amendments to the U.S. Constitution;

C.     An order and judgment declaring that the Act, as it relates to a candidate for President, is unconstitutional on its face because it violates the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution;

D.     An order and judgment declaring that the Act, as it relates to a candidate for President, is unconstitutional on its face because it denies California Voter Plaintiffs, and millions

24

Complaint for Declaratory
and Injunctive Relief

of other voters, their right to equal protection under the law, in violation of the Fourteenth Amendment to the U.S. Constitution;

E.     An order permanently enjoining and prohibiting Defendants from enforcing the Act, as it relates to a candidate for President, because it is in violation of the Qualifications Clause of Article II, § 1 of the U.S. Constitution;

F.     An order permanently enjoining and prohibiting Defendants from enforcing the Act, as it relates to a candidate for President, because it is in violation of the First and Fourteenth Amendments to the U.S. Constitution;

G.     An order permanently enjoining and prohibiting Defendants from enforcing the Act, as it relates to a candidate for President, because it is in violation of the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution;

H.     An order permanently enjoining and prohibiting Defendants from enforcing the Act, as it relates to a candidate for President, because it is in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

I.     An order and judgment awarding litigation costs, attorneys' fees and other litigation expenses incurred by Plaintiffs, pursuant to 42 U.S.C. § 1988(b);

J.     An order and judgment retaining jurisdiction over this action to ensure full compliance with the Court's orders; and

K.     Such other and further relief as the Court deems appropriate and just.

Dated: August 6, 2019

**DHILLON LAW GROUP INC.**

By:  _/s/ Harmeet K. Dhillon_____
Harmeet K. Dhillon, SBN 207873
Mark P. Meuser, SBN 231335
Gregory Michael, SBN 306814
Dhillon Law Group Inc.
177 Post Street, Suite 700
San Francisco, California 94108
*Attorneys for Plaintiffs*

25

Complaint for Declaratory
and Injunctive Relief